UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  DAVID GARCIA,  Defendant. | Case No. 16-20582  Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO VACATE UNDER 28 U.S.C. § 2255 [448, 457]**

From July 2014 through November 2016, Javier Robles, his nephews David and Miguel Garcia, and many others, were part of an organization that distributed controlled substances in California and Detroit and then funneled the drug proceeds back to California through numerous bank accounts. On December 19, 2018, Robles and the Garcias were convicted, by jury verdict, of one count of conspiracy to possess with intent to distribute and distribution of controlled substances. Miguel and Robles were also convicted of one count of conspiracy to launder monetary instruments. David Garcia was sentenced to the mandatory minimum of 10 years' imprisonment. His conviction was upheld on appeal. He now seeks post-conviction relief, claiming his trial counsel was ineffective in numerous respects. As Garcia's claims lack merit, the motion is DENIED.

## I.

This case involved significant pretrial and trial practice. The Sixth Circuit summarized the key facts in ruling on the defendants' direct appeals. Those facts are pertinent to the issues raised in David Garcia's ("Garcia") post-conviction motion under 28 U.S.C. § 2255. Thus, the Court will adopt and repeat most of them here:

> The Detroit Drug Enforcement Administration (DEA) began investigating drug trafficking activity in Detroit in June 2015. The DEA learned that a local drug dealer who dealt kilogram levels of heroin in the Detroit area, Edward Foster, was receiving his supply from Robles, who would send him heroin from California via USPS. In November 2016, Detroit DEA agents arrested Kenny Spencer, another local drug dealer, who told agents that he had just received a package from Robles containing a kilogram of heroin. Agents seized the package from Spencer's residence and found 800 grams of heroin.
>
> DEA agents obtained a search warrant for Robles's phone's real-time location data, which showed the phone at what was later confirmed to be Robles's home, 835 Sunset Avenue in Pasadena, California. Agents reviewed data from Robles's phone and found that he had sent Miguel Garcia's name and bank account information to Foster. Agents then learned that the Detroit police had seized $25,000 from Miguel in Detroit in February 2015. . . .
>
> On November 14, 2016, Detroit DEA agents flew to Pasadena to arrest Robles and execute search warrants at his personal residence, 835/837 Sunset, and what was believed to be his "stash house" at 2094/2096 Fair Oaks, where David also lived. Robles told agents that he was a "middle-man" who sold kilograms of heroin to dealers in Detroit through USPS, including Foster and Spencer, and used Bank of America accounts to collect his money. Agents also arrested David who, at the direction of Robles, sold 1.36 kilograms of methamphetamine to coconspirator Darius Cooper. At the Fair Oaks stash house, agents found approximately 6.1 kilograms of methamphetamine. In David's bedroom at the Fair Oaks house, agents recovered two drug scales and multiple small bags of methamphetamine, heroin, and cocaine packaged for distribution.
>
> On the same day they arrived in Pasadena, before the Detroit DEA agents arrested Robles and David and executed the search warrants, the agents discovered that Homeland Security Investigations (HSI) went to

2

> 835/837 Sunset in June 2016 and seized a large amount of narcotics from the residence. The Detroit agents used this information, that HSI had recovered drugs from Sunset a few months ago, in their probable-cause statement for the Sunset and Fair Oaks warrants.
>
> Two years later, in preparation for trial in July 2018, a Detroit DEA agent spoke with an HSI agent who was involved in the June 2016 seizure. The DEA agent learned that HSI had discovered Robles was involved in drug trafficking from an illegal state wiretap, the "Riverside wiretap." While the government did not concede that the Riverside wiretap was illegal, it agreed not to present any evidence at trial that was derived from the wiretap, including the drugs HSI seized in 2016 and two packages seized by USPS in 2015. Defendants argued that because the Sunset and Fair Oaks probable cause affidavits contained information from the Riverside wiretap—the 2016 HSI drug seizure—to support the application for warrants, all evidence seized from the Sunset and Fair Oaks residences must be suppressed.
>
> The district court held a four-day suppression hearing during which it excluded evidence of the 2016 HSI seizure and the USPS packages, but found the rest of the government's evidence admissible under the independent-source doctrine. The district court found that the Sunset and Fair Oaks affidavits still contained probable cause even when omitting the information that HSI seized drugs from the Sunset residence in 2016.
>
> At trial, the jury found David, Miguel, and Robles guilty of conspiracy to possess with intent to distribute and distribution of controlled substances. Additionally, the jury found Robles and Miguel guilty of conspiracy to launder money.

*United States v. Garcia*, 834 F. App'x 134, 137–38 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1436 (2021).

Ultimately, the Sixth Circuit rejected Garcia's challenges to the sufficiency of the evidence supporting his drug conspiracy conviction, the denial of his motion to suppress evidence allegedly tainted by an illegal search, and the existence of a variance between the charged and proven conspiracy. *Id.*

3

Garcia now seeks to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 448, 457.)[1] Because the motion, record of prior proceedings, and governing law "conclusively show that [Garcia] is entitled to no relief[,]" a hearing is not necessary. 28 U.S.C. § 2255(b); Rules Governing § 2255 Cases, Rule 4(b).

## II.

A federal prisoner may challenge his sentence by way of a motion filed pursuant to 28 U.S.C. § 2255. To prevail, Garcia must show that the sentence imposed is "in violation of the Constitution or laws of the United States," or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).

Garcia's § 2255 motion only contends that his Sixth Amendment right to a fair trial was violated due to the ineffective assistance of his trial counsel. This requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Deficient performance means his lawyer's representation fell below an objective standard of reasonableness. *Id.* at 694. Strategic decisions that are made

---

[1] After Garcia was transferred from Federal Correctional Institution Safford to United States Penitentiary Lompoc he filed a materially identical copy of the motion, ECF No. 457. The references in this Opinion will be to be the original motion, ECF No. 448.

4

after a thorough investigation by counsel "are virtually unchallengeable." *Id*. at 690. Prejudice means there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

According to Garcia, his counsel provided deficient performance in the following ways: by failing to (1) adequately challenge probable cause for certain search warrants during the suppression hearing, (2) challenge the drug conspiracy statute as unconstitutionally vague, (3) file a motion to sever, (4) file a motion for lack of venue, and (5) call Garcia's cousin Luis Garcia to testify on his behalf. (ECF No. 448.) But for these failings, says Garcia, the result of his trial would have been different. (*Id*.)

While Garcia's claims of ineffective assistance of counsel are properly raised in this § 2255 motion, *United States v. Graham*, 484 F.3d 413, 421–22 (6th Cir. 2007), and are not subject to the procedural default rule, *Massaro v. United States*, 538 U.S. 500, 504 (2003), they fail on their merits. The Court will address them in turn.

### A.

First, Garcia raises an issue with his counsel's handling of a motion to suppress.

Prior to trial, it was learned that certain evidence the government intended to introduce may have derived from an illegal state wiretap (the "Riverside wiretaps"). Without admitting the illegality, the government agreed not to introduce certain evidence. Defendants, though, sought to exclude even more evidence as fruit of the

5

poisonous wiretaps. So the Court conducted a suppression hearing to determine whether additional trial evidence may have derived from the wiretaps. The Court received witness testimony and affidavits. The parties also provided briefing and supplemental briefing. (ECF Nos. 200, 201, 209, 217.) After considering this record, the Court found that certain evidence was derived from the wiretaps and ordered it excluded from trial but found that other evidence was derived from independent sources and thus, was not subject to exclusion. (ECF No. 358, PageID.3939–50.)

The suppression motion involved evidence that was seized on November 16, 2016, following the execution of California search warrants on the Sunset Avenue properties where Robles (and other relatives) lived and the Fair Oaks Avenue properties where the Garcia brothers resided. This resulted in the seizure of methamphetamine and drug paraphernalia that were linked to Garcia. The government conceded that the affidavits in support of the search warrants included evidence obtained from the Riverside wiretaps. But it argued that if this tainted evidence was omitted from the affidavits, the remaining information still established probable cause. (*See* ECF No. 217.) Defendants did not rebut this argument. In fact, Robles' counsel, speaking for all the defendants, said that they had "no valid grounds" to argue lack of probable cause. (ECF No. 357, PageID.3891.) Instead, Defendants explained that they needed to hear from the witnesses at the suppression hearing to determine whether additional information in the affidavits was tainted and needed to be excised. (ECF No. 357, PageID.3893.) And if that was the case, they reserved their right to argue that probable cause was lacking. (*Id.*)

6

Following the suppression hearing, however, the Court found that no additional information in the search warrant affidavits was tied to the Riverside wiretaps. The Court then agreed with the government that after excising the evidence that the government agreed to exclude, the affidavits still contained probable cause to support the November 16, 2016 searches of both the Fair Oaks and Sunset Avenue properties. (ECF No. 358, PageID.3948.) While the Court mentioned Defendants' concession, that was not the basis of the Court's ruling. The Sixth Circuit subsequently found that the Court was "correct in determining that the Sunset and Fair Oaks warrants were supported by probable cause, even when the tainted information is excised." *Garcia*, 834 F. App'x at 139.

Garcia now contends that his trial counsel's failure to challenge probable cause was deficient performance. (ECF No. 488, PageID.7112–13.) The Court disagrees. "Counsel could not be ineffective for failing to raise a meritless argument." *Shakir v. United States*, Nos. 21-5180/5181, 2021 U.S. App. LEXIS 28562, at *11 (6th Cir. Sept. 20, 2021) (citing *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel."); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (rejecting claim of ineffective assistance of counsel where defense counsel "may have wisely decided not to pursue suppression motions that would have likely been futile"). Garcia's counsel submitted briefing on the suppression issue. The Court reviewed the search warrant affidavits and did its own independent analysis of probable cause. There was no deficient performance and

Garcia was not prejudiced by his lawyer's concession.[2] This claim does not warrant relief.

B.

Next, Garcia points to trial counsel's failure to file a motion to dismiss and motion for acquittal on the ground that the drug conspiracy statute, 21 U.S.C. § 846, is unconstitutionally vague because it does not clearly explain his proscribed conduct.

As Garcia explains it, he was only tied to a single drug transaction in California and not the activity in Detroit, and so on the facts of his case, the conspiracy statute did not give him fair notice. The evidence showed that Garcia was with his cousin Luis Garcia in California on November 16, 2016. While they were together, a bag was given to co-conspirator Darius Cooper. Shortly thereafter, Cooper was apprehended with 1.36 grams of methamphetamine in the bag and Luis Garcia had $7,500 in cash. But no drugs or money were found on Garcia. Nor had he ever been to Detroit. Thus, says Garcia, "[a]s he had not been identified on a single occasion throughout a several year investigation, [he] could not possibly have known that what he was alleged to be

---

[2] Defendants' motion to suppress challenged the entirety of the Sunset/Fair Oaks search warrants. (ECF No. 200.) Also, in the supplemental briefing provided by Robles and Garcia, they specifically sought to exclude "David Garcia['s] arrest and seizure on November 16, 2016 based on search of North Fair Oaks Blvd residence." (ECF No. 216, PageID.931.) Thus, to the extent Garcia is arguing his counsel was ineffective for failing to challenge his arrest or the entirety of the warrants, those arguments fail as well. And, as the government points out, Garcia already challenged the warrants on direct appeal. (ECF No. 459, PageID.7420.) He "cannot use a § 2255 motion, under the guise of an ineffective-assistance-of-counsel claim, to relitigate issues decided against him on direct appeal." *Braden v. United States*, No. 19-5987, 2019 WL 8111957, at *4 (6th Cir. Dec. 10, 2019) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)).

doing in California (Distribution of methamphetamine) could have implicated him in a prosecution in Detroit, Michigan with his uncle and brother . . . with heroin and fentanyl." (ECF No. 448, PageID.718.) In other words, he asks, "how could this 18 year old kid have known that what he was alleged to have done in California had anything whatsoever to do with a federal offense in Detroit? Especially when the other two individuals [Luis Garcia and Darius Cooper] were wholly prosecuted in the State of California?" (*Id.* at PageID.7126.)

There are several problems with this argument.

First, Garcia is correct that the Fifth Amendment Due Process Clause gives him a "right to fair warning of that conduct which will give rise to criminal penalties." *Marks v. United States*, 430 U.S. 188, 191 (1977). "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). And "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013) (citations omitted). But had Garcia properly cast his argument as a due process violation, it would be procedurally defaulted. He has provided no reason why he could not have challenged the constitutionality of the statute on direct appeal. *See Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) ("A petitioner must raise his claims on

9

direct appeal, '[o]therwise, the claim is procedurally defaulted' for purposes of § 2255 review." (quoting *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001)).

Next, even assuming Garcia can bypass procedural default by simply recasting the claim as ineffective assistance of counsel for failing to bring a motion, it fails to persuade.

For starters, several courts have summarily rejected vagueness challenges to the drug conspiracy statute. *See United States v. Johnson*, 825 F. App'x 156, 172 (5th Cir. 2020) ("Section 846 is not unconstitutionally vague."); *United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) (explaining that Section 846 withstands scrutiny under the Fifth Amendment because "[u]nder 'common understanding and practices,' the statute, by reference, sufficiently apprises all persons of the illegality of any agreement to possess and distribute a totally prohibited drug such as heroin"); *United States v. Jones*, No. 13CR00038-3, 2017 WL 1410848, at *5 (W.D. Va. Apr. 19, 2017) (reiterating that a constitutional challenge to § 846 is unavailing) (citing *United States v. Bullock*, 21 F. App'x 109, n. 3 (4th Cir. 2001)).

That statute provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. This language explicitly prohibits someone from attempting or conspiring (i.e., agreeing) with others to commit certain identified drug offenses, like knowingly or intentionally distributing heroin or methamphetamine. *See* 21 U.S.C. § 841(a)(1). The words "attempt" and "conspire" are not ambiguous. *See*

10

*United States v. Collins*, 272 F.3d 984 (7th Cir. 2001) (holding that a defendant's argument that § 846 is unconstitutionally vague because "it does not define an 'attempt or conspiracy' is without merit").

Garcia was charged and ultimately convicted of knowingly and intentionally agreeing with others, between July 2014 and November 2016, to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. (ECF Nos. 110, 263.) Nothing about this charge is vague to an ordinary person of common intelligence. The Sixth Circuit has also determined that the evidence of Garcia's conduct was sufficient for a jury to find he knowingly joined the conspiracy. As the Court explained, "Agents recovered two drug scales and multiple bags of methamphetamine, heroin, and cocaine packaged for distribution in Garcia's bedroom. At the direction of Robles, Garcia collected drug money around Pasadena for Robles and sold methamphetamine locally to Cooper. Notably, during trial, the government put forth evidence of the methamphetamine that Robles directed Garcia to sell to Cooper. Spencer then testified that this methamphetamine was 'the exact same stuff' Robles sold to him to distribute in Detroit." *Garcia*, 834 F. App'x at 142.

Indeed, Garcia mischaracterizes the facts in suggesting his dealings with Cooper in California had no connection whatsoever to Robles or any dealings in Detroit. Again, the Sixth Circuit's ruling is instructive:

> The evidence at trial proved that the goal of the conspiracy the government charged was to sell "dealer-level" amounts of heroin and methamphetamine to local dealers in California and Michigan. The nature of the scheme was the same in California and Michigan. Robles

11

was the head of the organization who often directed Miguel to funnel money through his bank account and Garcia to mail and sell controlled substances. For example, Cooper contacted Robles to set up a deal for 1.36 kilograms of methamphetamine. Robles then contacted Garcia, who shortly after was seen leaving Robles's residence with a heavy plastic bag. Officers later recovered a white plastic bag with 1.36 kilograms of methamphetamine in Cooper's car. The participants of the deal overlapped as well. Garcia sold drugs in California and via USPS in Michigan and Miguel funneled money in both California and Michigan. Viewing the evidence in the light most favorable to the government, a jury could have found the existence of a single conspiracy.

*Garcia*, 834 F. App'x at 143.

Thus, the Court finds no merit in Garcia's claim that he could not possibly have understood how his conduct could implicate him in a drug conspiracy involving his uncle and brother. As applied to Garcia's case, § 846 cannot be characterized as unconstitutionally vague. It follows that his counsel was not deficient for failing to file a motion to the contrary nor was he prejudiced by the lack of such a filing. *See Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005) ("Failing to file a frivolous motion does not constitute ineffective assistance of counsel"); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

## C.

Garcia also faults his trial counsel for failing to file a motion to sever his case from that of his co-defendants. He believes his counsel should have seen that any attachment between Garcia and his brother and uncle, "a self professed drug trafficker in Detroit, from California, was prejudicial to a substantial and injurious effect." (ECF No. 448, PageID.7130.)

Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). But in the federal system, there is a preference for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987) (noting that "[a]s a general rule, persons jointly indicted should be tried together."). This preference is especially strong where, as here, "two defendants are accused of participating in a conspiracy or joint scheme." *United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002) (citing *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir. 1992)). "Juries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (citations omitted). Thus, severance "is an extraordinary remedy, employed only to alleviate 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005) (quoting *Zafiro*, 506 U.S. at 539). A risk of prejudice might occur where "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539. But Garcia has provided no such evidence here.

13

Instead, Garcia's primary contention is that the evidence against him—the November 2016 methamphetamine transaction involving Luis Garcia and Darius Cooper—was slight and thus, there was a serious risk that he would be unable to overcome the spill-over damage from the strong evidence relating only to co-defendants Miguel and Robles. (ECF No. 448, PageID.7132–33.)

According to Garcia, without a severance he "was trapsed across the United States to be prosecuted with individuals who were in Detroit, who were caught red-handed with evidence that was directly related to Detroit, and to which one, Javier Robles outright admitted to," yet Robles never accused Garcia of being connected to him or his activity. (*Id*. at PageID.7133.) Garcia argues again that he was simply an 18-year-old kid from Pasadena, California who never stepped foot in Detroit, Michigan. (ECF No. 448, PageID.7130.) These arguments would not have warranted a severance.

"It is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000) (quoting *Zafiro*, 506 U.S. at 540). Nor is severance required "if some evidence is admissible against some defendants and not others" or "because the proof is greater against a co-defendant." *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) (citation omitted). As the Sixth Circuit has explained:

> A defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . [I]n a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that the jury must be presumed

> capable of sorting out the evidence and considering the case of each defendant separately. The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases.

*Causey*, 834 F.2d at 1288; *see also United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004) (holding that the moving defendant had not shown "substantial prejudice" where he argued that likelihood of acquittal increases with severance and that evidence against a co-defendant is far more damaging).

As Garcia's motion makes clear, the jury in his trial did consider the case of each defendant separately. For example, the government presented evidence of Garcia mailing a package from to California to an address in Detroit associated with Kenny Spencer around the time that Spencer said he received a shipment of heroin from Robles. While the jury found Garcia guilty of the conspiracy charge, they did not attribute any amount of heroin to him. (ECF No. 263.)

Thus, the fact that there may have been stronger evidence linking Miguel and Robles to the conspiracy than Garcia did not warrant a severance. Nor does Garcia explain why, given the nature of the charge against him, the drug trafficking evidence involving Miguel and Robles would not also have been admissible in any separate trial against him. Again, Garcia was charged with a conspiracy. His trial counsel was not deficient for failing to file a motion to sever. *Goldsby*, 152 F. App'x at 438; *Coley*, 706 F.3d at 752.

## D.

The same is true for Garcia's claim that his trial counsel was ineffective for failing to file a motion to dismiss the indictment and judgment of acquittal based on improper venue.

Garcia's refrain is familiar: he never stepped foot in Detroit. He was not identified in the investigation involving his uncle's and brother's activities in Detroit and he was oblivious to such activity. The November 16, 2016 drug transaction occurred in California and the two individuals caught with the drugs and money (Luis Garcia and Darius Cooper) were both prosecuted in California. (ECF No. 448, PageID.7134.) Garcia further contends that he was "exculpated at trial of any dealings with heroin" and was "found guilty for only the methamphetamine" which occurred in California. (*Id.* at PageID.7135.) Thus, says Garcia, he was prejudiced "by being prosecuted along with the self professed drug dealer in . . . Detroit and outside of the district where the allegations of the activity were committed." (*Id.*)

That Garcia's "overt acts" may have occurred in California does not make the Eastern District of Michigan an improper venue. "For drug conspiracies, venue is proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed." *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001) (citing *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984)). Also, "[a] conspiracy defendant need not have entered the district so long as this standard is met." *Id. See also United States v. Feagan*, 472 F. App'x 382, 394 (6th Cir. 2012) (holding that "[a]lthough Defendant may never have stepped foot in

16

Tennessee," the evidence supported that venue because of the "many examples of overt acts that were committed in furtherance of the conspiracy in the Eastern District of Tennessee"); *United States v. Character*, 76 F. App'x 690, 695 (6th Cir. 2003) ("Though [defendant], himself, may never have entered Michigan to commit an overt act during the conspiracy, it is enough that a coconspirator . . . committed an over act furthering the conspiracy within the district").

There is no dispute that regardless of the location of Garcia's conduct, his co-conspirators engaged in acts in the Eastern District of Michigan. (*See* ECF No. 459, PageID.7429 ("The Robles DTO sold kilogram-quantities of drugs in Michigan and funneled the proceeds from their drug dealing back to California.").) Garcia's motion makes this very clear. Thus, venue was proper in this District. His counsel did not perform deficiently by failing to challenge a proper venue, nor did Garcia suffer any prejudice. He is not entitled to relief on this claim.

### E.

Lastly, Garcia claims his Sixth Amendment rights were violated when his trial counsel failed to interview Darius Cooper and Luis Garcia or call them to testify on Garcia's behalf at trial.

Luis and Cooper were charged in a criminal complaint in California state court for the November 2016 methamphetamine transaction. (ECF No. 448, PageID.7165–66.) According to Garcia, he does not know what transpired with Cooper. Thus, he has not explained how Cooper's testimony would have been helpful. Luis was subsequently charged in an information. (*Id.* at PageID.7179–80.) Luis pled guilty in

17

April 2019 and was sentenced in June 2019 to three years in county jail. (*Id*. at PageID.7199.) Luis has submitted an affidavit that "he would have testified that the methamphetamine found was [his]" and that the November 2016 activity had nothing to do with Robles or Detroit. (ECF No. 448-1, PageID.7199.)

Garcia says this testimony would have supported his vagueness challenge, his motions to sever and for lack of venue, and "plac[ed] a reasonable doubt into the minds of the jury." (ECF No. 448, PageID.7141.) For the reasons already given, however, Luis' proffered testimony does not impact the constitutionality of the drug conspiracy statute or the propriety of a severance or venue.

Nor does the affidavit establish deficient performance or prejudice. David and Miguel Garcia were given bond during the pendency of this case. They were living back home in California. The trial did not take place until December 2018. Luis is their cousin. He, too, had been charged criminally in November 2018. So the Court is hard-pressed to believe that their respective cases were not a topic of conversation. Yet Garcia's motion fails to explain whether Luis expressed a willingness to testify at the time and, if so, whether Garcia conveyed this to his trial counsel or whether Luis made any attempt to contact his trial counsel. In fact, there is good reason to think that Luis would not have testified consistent with his affidavit: at the time of Garcia's trial, Luis had not yet pled guilty.

It is true that "[t]he failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010). But if a witness does not possess exculpatory

18

information, defense counsel has no obligation to call that witness to testify. *Id*. Here, "[i]n order to provide helpful testimony, [Luis Garcia] would have had to incriminate [himself], an improbable scenario." *Goldsby v. United States*, 152 F. App'x 431, 436 (6th Cir. 2005.) Again, at the time of the trial in December 2018, Luis had just been charged in California and had not yet pled guilty. This alone likely explains counsel's decision to not interview or call him. *See Carson v. United States*, 3 F. App'x. 321, 324 (6th Cir. 2001) ("While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation." (citing *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998))).

And even assuming that Luis would have testified at Garcia's trial that the methamphetamine belonged to Luis, that would not have negated Garcia's involvement in the transaction. Indeed, the amended criminal complaint against Luis (to which he ultimately pled guilty) contains numerous allegations about Garcia's conduct that is consistent with the evidence presented during Garcia's trial—including that Luis possessed four kilograms of methamphetamine at the Fair Oaks address while accompanied by Garcia, that shortly thereafter Garcia met Darius Cooper at the Fair Oaks property and gave him a white grocery bag containing over one kilogram of methamphetamine, and that shortly thereafter Luis was found in possession of $7,500. (ECF No. 488, PageID.7174.) Also, Luis' claim that the

19

California methamphetamine transaction had no connection to Robles would have been challenged by cell phone records that revealed a contact between Robles and Cooper and then Robles and Garcia right around the time of the hand off of the bag from Garcia to Cooper. Not to mention the trial evidence regarding the drugs and drug paraphernalia found in Garcia's bedroom at the Fair Oaks property on the day of his arrest, Garcia's mailing a package of drugs to Michigan for Robles, and Garcia's collection of money for the Robles DTO.

In sum, Garcia cannot demonstrate a reasonable probability that the outcome of the trial would have been different had his trial counsel called Luis as a witness. Garcia is not entitled to relief on this claim.

### III.

For these reasons, Garcia cannot establish a basis for granting his § 2255 motion. The motion is DENIED. Nor is Garcia entitled to a certificate of appealability. A certificate of appealability must issue before Garcia may appeal "the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). In order to receive a certificate of appealability, Garcia must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But for the reasons explained above, Garcia has not done so.

SO ORDERED.

Dated: March 15, 2022

                                                            s/Laurie J. Michelson
                                                            LAURIE J. MICHELSON
                                                            UNITED STATES DISTRICT JUDGE